KANSAS CITY STRUCTURAL STEEL COMPANY *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 11049.    Promulgated November 10, 1947.

*Wallace Sutherland, Esq.*, for the petitioner.
*Frank M. Cavanaugh, Esq.*, for the respondent.

## OPINION.

Van Fossan, *Judge*: The sole question in controversy is whether or not the entire amount of $81,607.66 is a class of deduction abnormal for the taxpayer under the provisions of section 711 (b) (1) (J) (i) of the Internal Revenue Code.[1]

[1] SEC. 711. EXCESS PROFITS NET INCOME.

\* \* \* \* \* \* \*

(b) TAXABLE YEARS IN BASE PERIOD.—

(1) GENERAL RULE AND ADJUSTMENTS.—The excess profits net income for any taxable year subject to the Revenue Act of 1936 shall be the normal-tax net income, as defined in section 13 (a) of such Act; and for any other taxable year beginning after December 31, 1937, and before January 1, 1940, shall be the special-class net income, as defined in section 14 (a) of the applicable revenue law. In either case the following adjustments shall be made \* \* \*

\* \* \* \* \* \*

(J) ABNORMAL DEDUCTIONS.—Under regulations prescribed by the Commissioner, with the Approval of the Secretary, for the determination, for the purposes of this subparagraph, of the classification of deductions—

It is argued by respondent that the original debt and all additions thereto resulted directly from materials and services furnished by petitioner in its usual course of business; that it was an uncollected trade account originally and remained such until petitioner claimed its loss; that there was nothing abnormal about the original trade account established by petitioner for the erection of an athletic club building; and that any additional loss through advances is properly classifiable as collection expenses to be added thereto.

The facts of record do not support the respondent's theory. It is true that sometime prior to 1931 the petitioner had an account receivable with a balance therein of $243,938.30 owing to it for the erection of a structural steel frame for an athletic club building. However, upon default by the owner of the property, the petitioner purchased the property at the mechanic's lien foreclosure sale at a net cost to it of $517,259.89, including the amount due it of $243,938.30. In substance and effect, petitioner's trade account receivable of $243,938.30 was paid and the proceeds, together with an additional amount of $273,321.59, were invested in the property. Obviously, had petitioner attempted to claim a deduction at the time of the payment of the additional amount of $273,321.59 as an expense of collecting its accounts receivable, the claims would have been disallowed on the ground that the amount, together with the amount of the account receivable, represented the cost of the property purchased.

Petitioner sold a one-half interest in the property for $300,000. The cost of the whole property having been $517,259.89, the cost to petitioner of its remaining one-half interest was $217,259.89. The co-owners of the property formed a corporation, transferred the property to it, and each received one-half of the corporation's shares. Thereafter petitioner made advances to the corporation. That a very small portion of such advances consisted of labor and materials for much needed repairs and improvements in the building is not important. The advances were made by petitioner to protect its investment and it was so stipulated.

From the record it appears that petitioner claimed a loss deduction in 1937 of both the amounts of $217,259.89 and $635,152.80, but, as stated in respondent's brief, the respondent "disallowed the $217,259.89 common stock investment on account of worthlessness in prior years." As to the later advances represented by second mortgage bonds, respondent "in settlement allowed a deduction of $81,671.66." Apparently at that time the respondent did not treat petitioner's loss

---

(i) Deductions of any class shall not be allowed if deductions of such class were abnormal for the taxpayer, and

(ii) If the class of deductions was normal for the taxpayer, but the deductions of such class were in excess of 125 per centum of the average amount of deductions of such class for the four previous taxable years, they shall be disallowed in an amount equal to such excess.

as an entirety, i. e., as one arising out of a trade account, together with additional amounts properly classifiable as collection expense to be added thereto, as he now argues it should be treated.

During its entire history petitioner neither made any similar investment in realty or other property, or advances for its protection, nor did it ever make any advances for the protection of a trade account receivable. It was not engaged in the business of operating an athletic club building or of advancing funds for such operation. It was engaged in the business of steel fabrication and erection. Its investment and advancements, and resultant loss, were unusual and of a class by themselves.

The situation herein is analogous to that presented in *Green Bay Lumber Co.*, 3 T. C. 824, wherein it is stated:

* * * We are of the opinion, however, that Congress did not intend to limit classification of deductions for the purposes of subsection (J) to the "statutory deduction categories" of section 23. This is not to say we disapprove or find to be unsound the requirement of the regulation that "reference must be made to the deductions of the entire class rather than to any particular deductible items therein." We merely hold that bad debts do not all have to fall into a single class—a view, incidentally, specifically recognized by section 23 (k), I.R.C., which classifies bad debts into those coming within the "general rule," securities becoming worthless, nonbusiness debts, and securities of affiliated corporations. The question therefore becomes largely one of fact, i. e., whether the $8,000 item is of a different class from the other bad debts which were claimed and allowed.

Since the character of the deduction of $81,607.66 allowed in 1937 is wholly unlike other bad debt deductions taken by petitioner and allowed in the base period years, and since it arose under its own peculiar conditions and circumstances, the petitioner is entitled, in determining the excess profits net aggregate income for the base period years, to the disallowance of the entire amount of $81,607.66 in 1937 as a deduction of a class abnormal for the taxpayer under section 711 (b) (1) (J) (i).

*Oaklawn Jockey Club*, 8 T. C. 1128, and *Arrow-Hart & Hegeman Electric Co.*, 7 T. C. 1350, cited by respondent, are distinguishable on the facts and not controlling herein.

Reviewed by the Court.

*Decision will be entered under Rule 50.*